UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-10150-ADB |
| TJAC WATERLOO, LLC AND ZVI CONSTRUCTION CO., LLC, | * * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

April 7, 2016

**I.    Introduction**

On January 29, 2016, the University of Notre Dame (USA) in England ("Notre Dame")

filed a Complaint in Suffolk Superior Court against TJAC Waterloo, LLC ("TJAC") and ZVI

Construction Co., LLC ("ZVI"). Notre Dame sought injunctive relief to temporarily restrain

TJAC and ZVI (collectively, the "Defendants") from dissipating their assets until the parties

completed an ongoing arbitration in London, England. [ECF No. 1-1 at 3-16]. Along with its

filing of the complaint, Notre Dame filed an Emergency Motion for a Temporary Restraining

Order and Preliminary Injunction. [ECF No. 1-1 at 17-38]. On February 1, 2016, ZVI removed

the action to federal court under Section 203 of the Federal Arbitration Act. 9 U.S.C. § 203.

Notre Dame did not object to the removal, and on February 10, 2016, the Court held oral

argument on the Motion for a Temporary Restraining Order and Preliminary Injunction.

On February 16, 2016, before the Court had issued a decision on the pending motion,

Notre Dame filed an Amended Complaint. [ECF No. 28]. While the original state court

complaint contained only two counts (for injunctive relief and declaratory judgment), the

Amended Complaint contained five: Confirmation of Foreign Arbital Award under 9 U.S.C. §

207 (Count I); Attachment (Count II); Temporary and Preliminary Injunctive Relief (Count III);

Recognition of Foreign Judgment Pursuant to Mass. Gen. L. ch. 235, § 23A (Count IV); and

Declaratory Judgment (Count V). The day after it filed the Amended Complaint, Notre Dame

filed a "Motion to Confirm Foreign Award and to Issue Security Pursuant to the Convention and

Fed. R. Civ. P. 64, 65, and for Expedited Consideration." [ECF No. 30]. The Court denied Notre

Dame's pending motion for a Temporary Restraining and Preliminary Injunction as moot, [ECF

No. 32], ordered briefing on the newly filed motion, and held oral argument on March 8, 2016.

In opposing Notre Dame's motion, the Defendants also filed a joint Motion to Dismiss the

Amended Complaint [ECF No. 44], which is now ripe.

## II.    Factual Background

This case involves the purchase and renovation of Conway Hall in London, England. On

October 25, 2010, Notre Dame and the Defendants entered into a contract (the "P&S

Agreement") whereby Notre Dame agreed to purchase Conway Hall from TJAC for $58,833,700

after TJAC's affiliated contractor ZVI renovated the building. [ECF No. 28 ("Complt.") ¶ 17]. In

December 2011, after ZVI completed the renovations, Notre Dame purchased Conway Hall from

TJAC. Id. ¶ 1.[1]

Notre Dame now alleges that after it purchased Conway Hall, numerous defects became

apparent, including malfunctioning fire detectors, falling tiles, and unsafe secondary glazing. Id.

¶¶ 20-23. As a result, in February 2014, Notre Dame invoked the P&S Agreement's dispute

resolution procedure and "brought suit for an expert determination of Defendants' liability and

---

[1] Notre Dame paid the full purchase price, minus a $401,997.60 retainage. [ECF No. 12-1 ¶ 7].

corresponding money judgment." [ECF No. 11 at 9]. Under Section 17 of the P&S Agreement, "any dispute arising between the parties" as to their "respective right duties and obligations" must be determined by an "independent duly experienced surveyor appointed . . . by the President or other proper officer of the Royal Institution of Chartered Surveyors." [ECF No. 12-2 § 17.1 (the "Disputes Clause")]. Notre Dame, TJAC, and ZVI agreed to appoint an expert (Anthony Bingham, hereinafter, the "Expert") to resolve their dispute regarding liability for the alleged defects. [ECF No. 12-9].

In an effort to efficiently resolve the dispute, the parties agreed to "decide liability first," and any damages later. [ECF No. 12-1 ¶ 14; see also ECF No. 12-10 at 4 ("The Respondents have agreed on terms to hearings split between liability and quantum.")]. On December 30, 2014, Notre Dame submitted a list of over one hundred alleged defects to the Expert. [ECF No. 12-1 ¶ 14]. Notre Dame contended that TJAC and ZVI breached their contractual obligations with respect to each of the identified defects. [ECF No. 12-10 at 8]. Defendants submitted their responsive submissions on liability on January 23, 2015; the parties presented oral argument on February 12, 13, and 19, 2015; and they submitted closing submissions on March 26, 2015. [ECF No. 11 ¶ 11].

On May 30, 2015, the Expert issued "A Document of Preliminary Indications on Liability For Comment In Reply By Parties." [ECF No. 29-4 ("Preliminary Determination")]. The first page of this Preliminary Determination stated that it was "Expert's Indications Only," and the last page invited comment from the parties, stating that "[n]one of the answers are the final answers. All and any may be commented upon in any way seen fit." [ECF No. 29-4 at 80-81]. The Expert wrote that it was "not the final Decisions on Liability. The parties may now make a final comment. Thereupon liability will be determined and published." [ECF No. 29-4 at 3].

On July 21, 2015, after receiving comments from the parties, the Expert issued "An Expert Determination on Liability." [ECF No. 12-10 (the "Determination on Liability")]. The Expert noted that the Determination on Liability constituted the "binding decision[] as to Liability" and that it "then remain[ed] for the parties to argue Causation and Loss (Quantum)." [12-10 at 4]. In the 81-page Determination on Liability, the Expert analyzed each alleged defect one-by-one and found Defendants liable for many of the defects identified by Notre Dame.

Notre Dame submitted to the Expert its "Statement of Case on Quantum" on October 16, 2015, in which it argued that it is entitled to more than $8.5 million in damages. [ECF No. 29-6]. This over 8,000-page submission included Notre Dame's legal arguments, a schedule of its alleged losses, an expert report, witness statements, and documentary evidence. [ECF No. 29-6 at 5-6]. Five days after receiving this submission, Defendants requested a stay of the damages proceeding, citing "serious health issues" affecting an individual within the Defendants' businesses. [ECF No. 11 ¶ 15]. Notre Dame consented to the request, and a damages hearing is now scheduled for May 2016. Id. ¶ 23.

Notre Dame brought the instant action primarily to obtain interim relief pending the Expert's determination on damages. According to Notre Dame, when Defendants asked for a stay of the damages proceeding, Notre Dame made two requests, both of which were rejected. Notre Dame asked that the Defendants:

> (1) agree not to dissipate, encumber or transfer their assets outside of the normal course of business dealings unless reasonable prior notice is given to [Notre Dame], and (2) provide confirmation that they continue to comply with clause 12.1 of the parties' contract, which requires ZVI and others to maintain professional indemnity insurance for not less than £5 million ($7.2 million) for a minimum of 12 years following practical completion of the project.

[ECF No. 11 ¶ 16]. Defendants would not consent to a non-dissipation agreement and until recently, would not confirm whether they held the required liability insurance. Id. ¶ 18-20. At the February 10, 2016 oral argument, counsel for Defendants confirmed that they had allowed the insurance to lapse.[2]

### III.   Notre Dame's Motion to Confirm Foreign Award and to Issue Security Pursuant to the Convention and Fed. R. Civ. P. 64, 65

Notre Dame has requested that the Court confirm the Expert's Determination on Liability pursuant to the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). In addition, it has asked the Court to order prejudgment security until the Expert issues a decision on damages. As explained below, the Court will confirm the Determination on Liability and order an attachment of Defendants' property, pursuant to Fed. R. Civ. P. 64 and Mass. Gen. L. 235 § 23A.

### A.  Confirmation of Arbitration Award[3]

Under the Federal Arbitration Act, a court must confirm a foreign arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the

---

[2] Under clause 12.2 of the P&S Agreement, TJAC "shall require that [ZVI] . . . maintains professional indemnity insurance cover with a reputable insurer for an amount not less than Five Million Pounds (£5,000,000) . . . for a minimum of 12 years following Practical Completion." [ECF No. 12-2 § 12.2].

[3] Though Defendants removed this action to federal court under the Federal Arbitration Act, they have since suggested that the Court may not have subject matter jurisdiction. [ECF No. 47 at 8]. The FAA confers federal subject matter jurisdiction over "[a]n action or proceeding falling under the Convention." 9 U.S.C. § 203. The Convention, in turn, applies to any "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . ." 9 U.S.C. § 202. Defendants have questioned whether the Determination on Liability constitutes an "arbitral award" arising under the Convention. The Court finds that it does, and that it therefore has subject matter jurisdiction. Although the P&S Agreement does not call the Expert an "arbitrator" or the dispute resolution process "arbitration," the process bears all of the hallmarks of an arbitration. See Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir. 2004) (noting that whether a remedy constitutes arbitration "does not depend on the nomenclature used in the agreement; rather, the question is how closely

award specified in the [Convention]." 9 U.S.C. § 207. Article Five of the Convention lists five

grounds on which a Court may refuse to enforce an award, two of which are relevant here:

> (c) The award deals with a difference not contemplated by or not falling
> within the terms of the submission to arbitration, or it contains decisions on
> matters beyond the scope of the submission to arbitration, provided that, if
> the decisions on matters submitted to arbitration can be separated from those
> not so submitted, that part of the award which contains decisions on matters
> submitted to arbitration may be recognized and enforced; or
>
> . . .
>
> (e) The award has not yet become binding, on the parties, or has been set
> aside or suspended by a competent authority of the country in which, or
> under the law of which, that award was made.

Convention, Art. V, 9 U.S.C. § 201. Defendants jointly argue that the Court should decline to

confirm the Determination on Liability under clause (e), because it is not a binding award.

Separately, ZVI argues that even if the Court finds that the Determination on Liability is binding,

it should nonetheless decline to confirm it with respect to ZVI under clause (c), because the

Expert lacked jurisdiction to issue an award against ZVI. The Court is not persuaded by either

argument.

First, although the Expert proceeding is ongoing, with the damages decision still

outstanding, the Determination on Liability is a final and binding award. Where there is a formal,

agreed upon bifurcation of an arbitration, between liability and damages, a district court can

confirm the final liability award even while the damages portion of the arbitration is pending.

---

the specified procedure resembles classic arbitration and whether treating the procedure as
arbitration serves the intuited purposes of Congress.") (internal citation omitted). Pursuant to the
Dispute Clause of the P&S Agreement, an independent third party expert was appointed to
govern the proceedings, each party had the opportunity to present their case, the expert used
substantive standards in ruling on the issues in front of him, and he issued a final and binding
judgment. See id. (finding contractual provision referring disputes for expert accounting
constituted arbitration where provided for final and binding resolution by an independent
adjudicator, had substantive standards, and allowed each party to present its case).

See Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 232, 236 (1st Cir. 2001) (finding that
"an arbitration award on the issue of liability in a bifurcated proceeding is a final partial award
reviewable by the district court" where "there is a formal, agreed-to bifurcation at the arbitration
stage"); see also Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st
Cir. 2001) (extending Hart Surgical holding to situation in which "the bifurcation has been
informally agreed upon"). Here, Defendants admit that the parties agreed to "decide liability
first." [ECF No. 12-1 ¶ 14; see also ECF No. 12-10 at 4 ("The Respondents have agreed on terms
to hearings split between liability and quantum.")]. All evidence related to the issue of liability
was presented to the Expert, after which he issued a final decision on liability.

Defendants argue that "the plain language of" the Determination on Liability
"demonstrates that the decision was neither final nor intended to be a binding decision on
liability." [ECF No. 43 at 11]. They point to two sentences, on the last page of the Determination
on Liability, which read, "None of the answers are the final answers. All and any may now be
commented upon in any way seen fit." [ECF No. 12-10 at 81]. The only way to read these
sentences is as a remnant inadvertently left over from an earlier version of the determination.
That same language was included in the May 30, 2015 Preliminary Determination [ECF No. 29-
4 at 76], after which the Expert received comments from both parties and then issued his
Determination on Liability. Reading the Determination on Liability as a whole, it was clearly
meant to be the final and binding decision on liability. [See ECF No. 12-10 at 4 ("This document
of today's date publishes the binding decisions as to Liability.")]. In a March 5, 2016 opinion,
the Expert affirmed that the Determination on Liability was his final finding on liability. He
stated that "[l]iability was decided via the 81-page Award published 21 July 2015" and that
"[t]he binding Decision of 21 July cannot be changed." [ECF No. 50-1 at 9, 11]. Accordingly,

the Determination on Liability is a binding award, and the Defendants cannot use clause (e) to avoid confirmation.

Second, ZVI argues that even if the Determination on Liability is final and binding, the Court should nonetheless decline to confirm it with respect to ZVI, because the Expert lacked jurisdiction over ZVI. To the extent the Expert issued a decision on ZVI's liability, ZVI argues, it was "beyond the scope of the submission to arbitration" and therefore should not be confirmed. [ECF No. 47 at 12-16].

The Expert had jurisdiction pursuant to the Dispute Clause of the P&S Agreement, which provides in relevant part:

> Any dispute arising between the parties hereto as to their respective duties and obligations hereunder (other than any with regard to the meaning or construction of this agreement) shall be determined by an independent duly experienced surveyor….on application of either Buyer or Seller . . .

[ECF No. 12-2 § 17.1]. ZVI contends that because only the "Buyer" or the "Seller" can "apply" for an expert determination, the Expert only had jurisdiction over Notre Dame and TJAC. "By its plain language," ZVI argues, "the P&S Agreement limits the jurisdiction of the Expert to only disputes between TJAC (defined in the P&S Agreement as 'Seller') and Notre Dame (defined in the P&S Agreement as the 'Buyer'), and not ZVI (defined as the 'Contractor')." [ECF No. 47 at 13].

ZVI's argument is contradicted by the text of the P&S Agreement, which states that "any dispute arising between *the parties hereto* as to their respective duties and obligations . . . . shall be determined by an independent duly experience surveyor." [ECF No. 12-2 § 17.1 (emphasis added)]. ZVI is undisputedly a party to the P&S Agreement. The title page of the P&S Agreement states that it is between TJAC, ZVI, and Notre Dame, and the first line of the P&S Agreement states that it is made "BETWEEN the Seller, the Contractor and the Buyer." Id. at 1,

5.[4] Moreover, Zvi Schwarzman signed the P&S agreement twice, once on behalf of TJAC and once on behalf of ZVI. Id. at 40. Despite this, ZVI contends that it was only a "nominal" party and that the majority of the P&S Agreement establishes contractual obligations between Notre Dame and TJAC. [ECF No. 47 at 14]. This may be true, and ZVI is, of course, free to argue during the damages phase of the expert proceeding that TJAC is largely or even wholly responsible for the damages. Any allocation of damages, however, is separate from the issue of jurisdiction. The Disputes Clause unmistakably gave the Expert jurisdiction over the three parties to the P&S Agreement—TJAC, Notre Dame, and ZVI.[5]

Moreover, this argument is belied by ZVI's conduct throughout the expert proceedings. From the beginning, ZVI agreed to be included in the arbitration, and throughout the process, ZVI and TJAC jointly filed documents, without distinguishing liability between the two. [See, e.g., ECF Nos. 12-9; 29-5].

## B.  Pre-Judgment Security

The damages portion of the Expert proceeding is now scheduled for May 2016. Notre Dame maintains that it will be entitled to approximately $8.5 million, and asks this Court for pre-judgment security to help ensure that Defendants have funds available to pay the final judgment, whenever it is issued. Notre Dame suggests that the Court issue prejudgment security in one of three ways: (1) by ordering "suitable security" pursuant to Article VI of the Convention; (2) by

---

[4] The P&S Agreement defines "Seller" as TJAC, "Contractor" as ZVI, and "Buyer" as Notre Dame. [ECF No. 12-2 at 5].
[5] In February 2016, in response to this litigation, ZVI asked the Expert to either re-issue the Determination on Liability without mentioning ZVI or to declare that he lacked jurisdiction over ZVI. [ECF No. 50-1 at 9-10]. In a March 5, 2016 decision, the Expert rejected both requests. [ECF No. 50-1 at 7-16].

issuing a non-dissipation order under Fed. R. Civ. P. 65; or (3) by ordering an attachment under

Fed. R. Civ. P. 64 and corresponding state law.

The Court cannot order security pursuant to Article VI of the Convention. Article VI

permits a Court to order security in limited circumstances that are not present here. It provides

that:

> [i]f an application for the setting aside or suspension of the award has been
> made to a competent authority referred to in article V(1)(e), the authority
> before which the award is sought to be relied upon may, if it considers it
> proper, adjourn the decision on the enforcement of the award and may also,
> on the application of the party claiming enforcement of the award, order the
> other party to give suitable security.

Convention, Art. VI, 9 U.S.C. § 201. Under Article VI, a proceeding to enforce an arbitration

award can be stayed, and security ordered during the stay, where an application to set aside or

suspend the award has been made elsewhere, which has not happened here. Neither party

contends that an application to set aside or suspend the award has been made in any jurisdiction

and therefore, the Court may not order a stay and "suitable security" pursuant to Article VI.

Likewise, the Court declines to issue a preliminary injunction under Fed. R. Civ. P. 65

because Notre Dame has not adequately established that it will suffer irreparable harm in the

absence of an injunction. The First Circuit has recognized "that a district court can grant

injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for

injunctive relief are satisfied." Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986).

To determine whether to issue a preliminary injunction, a court weighs four factors: "(1) the

likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is

denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as

contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of

the court's ruling on the public interest." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217

F.3d 8, 15 (1st Cir. 2000). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). Though Notre Dame has exhibited a likelihood of success on the merits, given that Defendants have already been found liable for numerous defects, it has not shown potential for irreparable harm.

"Irreparable harm is an essential prerequisite for a grant of injunctive relief." Ross-Simons of Warwick, Inc., 217 F.3d at 13. "To establish irreparable harm there must be an actual, viable, presently existing threat of serious harm." Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass. 1991); see also Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005) ("The possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, but the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets.") (internal citation omitted). Generally, a plaintiff establishes irreparable harm where it shows that its legal remedies are inadequate. Ross-Simons of Warwick, Inc., 217 F.3d at 13; see also Puerto Rico Hosp. Supply, Inc. v. Boston Sci. Corp., 426 F.3d 503, 507 (1st Cir. 2005) ("These injuries are not irreparable because later-issued damages can properly compensate any wrong committed."). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

Notre Dame argues that Defendants conduct to date gives a "strong indication that [Defendants] will dissipate assets or otherwise fail to satisfy a certain and substantial money judgment," and provides an extensive list of conduct in support, including Defendants' failure to maintain insurance, their request to delay the damages portion of the expert proceeding, and their

refusal to consent to a non-dissipation agreement. [ECF No. 50 at 16-17]. None of these justifications, however, satisfy Notre Dame's burden of establishing irreparable harm. Notre Dame has not provided any evidence that TJAC or ZVI are insolvent (or may soon become insolvent) or otherwise lack the financial ability to pay the damages for which they may be found liable. Nor has Notre Dame provided any evidence that TJAC or ZVI transferred, or attempted to transfer, assets beyond Notre Dame's reach. Notre Dame's "unsubstantiated fears of what the future may have in store" do not justify a preliminary injunction. Charlesbank Equity Fund II, 370 F.3d at 162.

In addition, even if Notre Dame had established irreparable harm, its request for a preliminary injunction would likely be barred by Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). In Grupo, the Supreme Court held that a federal district court cannot issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of a contract claim for money damages. Id. at 333. The Supreme Court found that because such a remedy was historically unavailable to a court in equity, it is now unavailable to federal courts. Id. at 332 ("[T]he equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence. Even when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here."). Here, because the underlying dispute is only for money damages—Notre Dame has not requested equitable relief, such as specific performance or recession, in connection with the breach of contract claim being arbitrated—this Court likely lacks authority to issue a preliminary injunction.

Grupo, however, does not foreclose state remedies. The holding in Grupo was motivated, in part, by a desire to preserve state remedies. The Supreme Court found that allowing the

requested preliminary injunction would render state prejudgment remedies a "virtual irrelevance." See id. at 330-331 ("There are other factors which likewise give us pause: The remedy sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?"); see also Erkan v. New Engl. Compound. Pharmacy Inc., 2012 WL 5896530, at *1 (D. Mass. Nov. 21, 2012) (finding that Grupo does not bar state law remedies).

Under Fed. R. Civ. P. 64, a court may grant every remedy, under the law of the state where the court is located, that "provides for seizing a person or property to secure satisfaction of the potential judgment." Massachusetts law allows real estate, goods and chattels and other property to be attached and held to satisfy a judgment for damages and costs that the plaintiff may eventually recover. Mass. R. Civ. P. 4.1(a). To order an attachment, a court must find that "there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Mass. R. Civ. P. 4.1 (c); see also Erkan, 2012 WL 5896530, at *1. No finding of irreparable harm is required. See Ruggieri v. M.I.W. Corp., 826 F. Supp. 2d 334, 336 (D. Mass. 2011) (under Massachusetts law, "a plaintiff need not demonstrate irreparable harm to be eligible for prejudgment attachment").

As described above, Notre Dame has demonstrated a reasonable likelihood of recovery, given that the final and binding Determination on Liability found Defendants at fault. The question next becomes what and how much property may be attached. Because the Defendants have stated they do not possess insurance, the amount of the attachment does not need to be

reduced to account for any insurance offset. Notre Dame proposes that the Court enter an attachment in the amount of $8.5 million, which is equal to the damages amount it has requested in the Expert proceeding. In support, Notre Dame has provided the Court an excerpt of the damages submission that it provided to the Expert. [ECF Nos. 29-6 to 29-11]. Because TJAC and ZVI have not yet filed their opposing submission with the Expert, however, the Court will not rely on Notre Dame's one-sided submission to determine the appropriate amount of the attachment. Instead, the Court will order an attachment in the amount $7.2 million, which is equal to the amount of liability insurance that TJAC and ZVI were required to carry under the P&S Agreement [ECF No. 11 ¶ 16], but admittedly do not have. This amount places Notre Dame in the position it would have been in had the Defendants upheld their obligation to carry insurance in that same amount. It is significantly less than what Notre Dame is requesting in damages and, as more fully described below, should give Notre Dame some security without unduly hindering the Defendants' business activities.

Notre Dame has not identified specific property belonging to either TJAC or ZVI that should be attached. TJAC and ZVI Defendants are related Massachusetts-based limited liability companies. Complt. ¶¶ 9-11. TJAC is a real estate development company while ZVI is a construction company. Id. ¶ 10.[6] The exact connection between TJAC and ZVI is unclear from the pleadings, but Zvi Scharzman, Co-Founder and Managing Director of TJAC, signed the P&S Agreement on behalf of both TJAC and ZVI, and both have offices at the same address.[7] Because the Defendants are so interconnected, the Court awards Notre Dame an attachment as to physical property of TJAC and ZVI totaling $7.2 million. The Court assumes that TJAC and ZVI

---

[6] TJAC's website has a "Construction" section that describes ZVI and directs visitors to ZVI's website. See http://tjacdevelopment.com/construction/.

[7] See http://tjacdevelopment.com/ and http://www.zviconstruction.com/.

jointly or severally own physical assets with a total net value of at least this amount. Such assets may remain in the custody of TJAC and ZVI and be used in the ordinary course of their ongoing business activities, but may not be sold or transferred pending further order of the Court. This attachment is effective until the Expert issues a final and binding damages determination.

By way of further explanation, the Court finds that an attachment is the only recourse available given the procedural posture of this case. Further, given the equities, the likelihood of a significant damages award, the absence of the insurance meant to give some security and the Defendants unwillingness to voluntarily set aside assets or agree to a moderate non-dissipation request, the Court has a responsibility to do what is possible to ensure the availability of assets to satisfy any damages award. Because the Court doesn't know exactly what physical assets there are, the terms of this attachment are necessarily somewhat vague. The parties should notify the Court if they are unable to resolve the terms of the attachment amongst themselves.

## IV.   Defendants' Motion to Dismiss the Amended Complaint

In addition to opposing Notre Dame's Motion, Defendants also filed a Motion to Dismiss the Amended Complaint. For the reasons stated above, the Motion is denied with respect to Count I (for confirmation under the Convention) and Count II (for an attachment), but granted with respect to Count III (for a preliminary injunction). In addition, for the reasons set forth below, the Motion is granted with respect to Count IV (for recognition of a foreign judgment under Mass. Gen. L. ch. 235 § 23A) and Count V (for declaratory judgment).

The Complaint sets forth no factual allegations that would support Count IV. Mass. Gen. L. ch. 235 § 23A governs the "recognition of foreign *country* judgments" in Massachusetts. Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 142 (1st Cir. 2010) (emphasis in original). It establishes that "any foreign judgment that is final and conclusive and enforceable

where rendered . . . shall be conclusive between the parties to the extent that it grants or denies

recovery of a sum of money." Mass. Gen. L. ch. 235 § 23A. A ''foreign judgment'' is defined as

"any judgment of a foreign state granting or denying recovery of a sum of money." Id. The

Expert's Determination on Liability plainly does not constitute a "foreign judgment" entitled to

recognition under Massachusetts law. It was not issued by a foreign state and it neither denies

nor grants recovery of a sum of money. As both parties have acknowledged, the Expert's finding

was limited to liability. Accordingly, there is no basis for applying Mass. Gen. L. ch. 235 § 23A,

and Count IV is dismissed.

Finally, Count V, for declaratory judgment, is an amalgamation of Notre Dame's other

four counts. Complt. ¶¶ 67-70. It essentially seeks a declaration that Notre Dame is entitled to the

relief requested in Counts I-IV. Declaratory relief is appropriate "(1) when the judgment will

serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will

terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding." Boston's Children First v. Boston Sch. Comm., 183 F. Supp. 2d 382, 396 (D. Mass.

2002), aff'd sub nom. Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71 (1st Cir. 2004)

(quoting 10B Wright, Miller & Kane, § 2759 (3d ed. 1998)). The Declaratory Judgment Act

gives district courts "a unique breadth of . . . discretion to decline to enter a declaratory

judgment." Biogen, Inc. v. Schering AG, 954 F. Supp. 391, 397 (D. Mass. 1996) (quoting Wilton

v. Seven Falls Co., 515 U.S. 277 (1995)); see also Fed. R. Civ. P. 57 Advisory Committee's Note

("When declaratory relief will not be effective in settling the controversy, the court may decline

to grant it."). A district court may exercise this discretion to dismiss a claim for declaratory

judgment. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("If a district court, in the sound

exercise of its judgment, determines after a complaint is filed that a declaratory judgment will

serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."). Here, because the Court has already granted the relief sought in Counts I and II, and dismissed Counts III and IV, pursuing the declaratory judgment count would serve no additional purpose. This Memorandum and Order sufficiently establishes the parties' respective rights, and therefore the Court finds that there is no need to move forward on the declaratory judgment count.

## V.   Conclusion

For the reasons stated herein: (1) the Determination on Liability is confirmed pursuant to 9 U.S.C. § 207; (2) Notre Dame is awarded an attachment as to Defendants' property in the amount of $7.2 million, and (3) Counts III, IV, and V of the Amended Complaint are dismissed.[8] The parties are directed to submit a joint status report every 60 days, until the Expert issues a final determination as to damages.

**So Ordered.**

Dated: April 7, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE

---

[8] Two Motions to Strike are currently pending [ECF Nos. 13 and 51]. Because the Court did not rely on the statements at issue in the Motions to Strike, they are both denied as moot.