**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND, <br><br> Plaintiff, <br><br> v. <br><br> TJAC WATERLOO, LLC AND ZVI CONSTRUCTION CO., LLC, <br><br> Defendants. | C.A. No.  1:16-cv-10150 |

**PLAINTIFF THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO CONFIRM FOREIGN ARBITRAL AWARD AND FOR SUMMARY JUDGMENT ON COUNT VI OF ITS SECOND SUPPLEMENTED AMENDED COMPLAINT**

I.       **UND's Claims Are Not Time-Barred.**

None of UND's claims is time barred. Rather, UND brought its motion to confirm the Expert's final quantum award well within the three-year period for confirmation of a final, binding arbitral award. This Court has already traveled down much of this well-trodden path and the parties have already taken a trip to the First Circuit, which affirmed this Court's rulings. TJAC and ZVI's arguments ignore at least three binding principles of law: (1) this Court is without jurisdiction to confirm an arbitral award unless it is final (or falls within an exception to the finality requirement);[1] (2) an arbitral award is not final unless it evidences the arbitrator's intention to resolve all claims submitted in the arbitration; and (3) the statute of limitations for confirmation of an arbitral award runs from the date the award becomes final and binding.

TJAC and ZVI claim that Award No. 4 was a final arbitral award and, therefore, the three-year period for confirmation ran from the date of that award. However, Award No. 4 does not evidence the Expert's intention to resolve *all* claims submitted in the demand for arbitration and, in fact, it evidences just the opposite. Therefore, it was not a final award entitled to confirmation when made[2] and, as such, the statute of limitations did not begin to run when Award No. 4 issued.

"Under the Federal Arbitration Act, a court must confirm a foreign arbitration award 'unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention")]. *Univ. of Notre Dame (USA) v. TJAC Waterloo, LLC*, C.A. No. 16-cv-10150-ADB,

---

[1] TJAC and ZVI do not argue that any exception applies here.
[2] Ironically, when UND sought to confirm the Expert's liability award, TJAC and ZVI argued that this Court should refuse to enforce the award because it was not a binding award. Order at 6. This Court, however, disagreed concluding that "[w]here there is a formal, agreed upon bifurcation of an arbitration, between liability and damages, a district court can confirm the final liability award even when the damages portion of the arbitration is pending." Order at 6-9. Thus, because the parties had agreed to bifurcate the Expert proceeding between liability and damages issues, UND could seek confirmation of the Expert's awards at the conclusion of each of those phases. *Id*. That exception does not apply here.

2016 U.S. Dist. LEXIS 47259, at *8 (D. Mass. Apr. 7, 2016) (the "Order"), *aff'd* 861 F.3d 287 (1st Cir. 2017). The Convention identifies five grounds on which a Court may refuse to enforce an award, one of which is relevant here: "The award has not yet become binding, on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Convention, Art. V, 9 U.S.C. § 201.

Thus, a district court is without jurisdiction to confirm an arbitral award unless it is final. *Hart Surgical, Inc. v. UltraCision, Inc.*, 244 F.3d 231, 233 (1st Cir. 2001); *accord First State Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 13-cv-11322-IT, 2014 U.S. Dist. LEXIS 149649 at *6-7 (D. Mass. Oct. 21, 2014). The prerequisite of finality promotes the role of arbitration as an expeditious alternative to traditional litigation. *See Hart Surgical, Inc.*, 244 F.3d at 233; *see also Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("[A] district court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and . . . delaying tactics in a proceeding that is supposed to produce a speedy decision."). Accordingly, under First Circuit law, the limitations periods in the Federal Arbitration Act run from the date of a final and binding decision. *See Hart Surgical, Inc.*, 244 F.3d at 233 (the one-year statute of limitations for vacatur motions runs from the date an award is made final); *accord Fradella v. Petricca*, 183 F.3d 17, 19-20 (1st Cir. 1999).[3]

"'[A]n arbitral award is deemed "final" provided it evidences the arbitrators' intention to resolve *all* claims submitted in the demand for arbitration.'" *Hart Surgical, Inc.*, 244 F.3d at 233 (quoting *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999)). Even when labeled a "Final

---

[3] The authority upon which TJAC and ZVI rely is distinguishable. *See Seetransport Wiking Trade Schiffarhtsgesellschaf MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 581 (2d Cir. 1993) (court rejected argument that the statute of limitations for confirmation of an arbitral award does not begin to run until all appeals from the arbitral award have been exhausted).

Award," an arbitral award is not treated as final unless it expresses an intention to resolve all claims submitted in the demands for arbitration. *First St. Ins. Co.*, 2014 U.S. Dist. LEXIS 149649, at *7.

This Court's April 7, 2016 Order directed the parties "to submit a joint status report every 60 days, *until the Expert issues a final determination as to damages*." Order at 17 (emphasis added). Meanwhile, in the Expert proceeding, UND submitted its Statement of the Case on Quantum identifying UND's principal damages claims as: (1) the cost of the works; (2) the costs of relocation; (3) VAT and (4) the costs of the expert determination. June 9, 2021 Declaration of John Tarantino at Ex. A ¶ 11. On April 11, 2017, the Expert issued Award No. 4, addressing the cost of certain of the works. Statement of Undisputed Facts (Dkt. 141) ("SUF") ¶ 8. In its June 1, 2017 status report UND reported that the Expert had issued Award No. 4, which was his quantum award with respect to some (but not all) of the quantum items. Dkt. 100 at Ex. A. Award No. 4 was not a final award entitled to confirmation because it does not evidence the Expert's intention to resolve *all* claims submitted in the demand for arbitration. Rather, Award No. 4 expressly states that there are six heads of claim yet to be determined and that the award represents the Expert's final views only as to the first head of claim—the cost of the works. Declaration of John Tarantino (Dkt. 143) ("Decl.") at Ex. 4, pp. 2.

To put Award No. 4 in context, on September 20, 2016, the Expert issued Award No. 3, which set forth his preliminary views on certain quantum issues and made clear that he would address certain quantum issues at a later time by including the notation "**(to follow)**" in bold, red text after Item 2: Relocation Issues; Item 3: Professional Fees and Item 4: VAT Recovery. Decl. at Ex. 3 ¶ 8. Thereafter, the Expert issued Award No. 4 representing his final views on the items addressed in Award No. 3. Decl. at Ex. 4. Consistent with the Expert's notations in Award No. 3 that relocation issues, professional fees and VAT recovery would be separately addressed, Award

No. 4 did not address those issues. *Id*. In its June 5, 2017 status report, UND explained that "[t]here remains outstanding from [the Expert] his determination in respect of the remaining quantum items: preliminaries and professional fees associated with the remedial works; relocation costs of students while the works were carried out; interest, VAT and legal costs associated with the determination process." Dkt. 100 at Ex. A.[4]

On July 27, 2018, the Expert issued Award No. 5, which addressed the preliminaries and professional fees associated with the remedial works; relocation costs of students while the works were carried out interest, and legal costs associated with the determination process that the Expert had noted in Award No. 3 were to follow. Decl. at Ex. 5. In its December 4, 2017 status report, UND informed the Court of Award No. 5 that the determination of VAT had not been finalized. Dkt. 115 at Ex. A. On December 5, 2018, the Expert issued a decision on interest and, finally, on March 31, 2020, a decision on VAT. Decl. at Exs. 6 and 7.

Thus, the statute of limitations did not begin to run when Award No. 4 issued because it was not final and did not resolve all quantum issues. Although Award No. 6 was issued less than three years before UND moved to confirm the Expert's arbitral award (and would not otherwise be time barred), TJAC and ZVI claim it is time barred because it awards interest on Award No. 4. Opp. at 7. Even if such a limitation could be read into the Federal Arbitration Act, because UND's motion to confirm Award No. 4 is not time barred, neither is its motion to confirm Award No. 6.

## II.  Award No. 7 Is Enforceable.

### A.  The Revenue Rule Has No Application Here.

TJAC and ZVI's claim that enforcement of Award No. 7 would violate the revenue rule

---

[4] TJAC and ZVI argue that UND should have requested confirmation of Award No. 4 in their July 24, 2017 Supplemented Amended Complaint. Opp. at 8. Separate and apart from the fact that Award No. 4 was not the Expert's final determination on damages, when UND filed its motion for leave to file their Supplemented Amended Complaint on February 3, 2017, the Expert had not yet issued Award No. 4.

4

reflects a fundamental misunderstanding of the revenue rule, which prevents U.S. courts from enforcing a tax judgment of another sovereign. *Pasquantino v. United States*, 544 U.S. 349, 352-53 (2005) ("At common law, the revenue rule generally barred courts from enforcing the tax laws of foreign sovereigns."); *see also Her Majesty the Queen in Right of Province of British Columbia v. Gilbertson*, 597 F.2d 1161, 1163 n.1 (9th Cir. 1979) (the revenue rule "prevents a foreign jurisdiction from either instituting a suit to recover taxes, or bringing a suit to enforce its own court's judgment for taxes"). The revenue rule is implicated in cases where "the main object of the action '[i]s the collection of money that would pay foreign tax claims.'" *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 249 (D.D.C. 2015). Conversely, the revenue rule is not implicated when "[t]he crux of the dispute [is] contract enforcement rather than the enforcement of a foreign revenue law." *Id*. (the revenue rule was not implicated where an arbitration award concerned tax returns filed pursuant to a settlement agreement with a foreign government because the matter was a contract case, not an action to enforce foreign tax laws); *accord Salini Costruttori S.P.A. v. Kingdom of Morocco*, 233 F. Supp. 3d 190, 200 (D.D.C. 2017); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 41 (D.D.C. 2013). This is true even if the contract contains tax-related provisions. *Belize Soc. Dev. Ltd.*, 5 F. Supp. 3d at 41. Therefore, an arbitral award that includes an award for reimbursement of VAT is entitled to confirmation. *See AVR Communs., Ltd. v. Am. Hearing Sys.*, No. 13-3027, 2014 U.S. Dist. LEXIS 61647, at *11 (D. Minn. May 5, 2014) (because the VAT component of an arbitral award set a payment obligation that the defendant owed to the plaintiff, not to the Israeli government, it was entitled to confirmation).

In the face of this clear law, TJAC and ZVI argue that this is not a case where the contract itself required the repayment of taxes, Opp. at 12, but they are wrong. UND sought to recover under the Agreement for both contractor fees and professional fees and relocation costs, as well as

for the VAT it paid on those fees and costs. Decl. at Exs. 5, 7. TJAC and ZVI accepted that UND was obligated to incur VAT on the professional fees and relocation costs. *Id*. at Ex. 7. However, TJAC and ZVI argued that although UND had paid 20 percent VAT on the contractor fees, VAT was not required on those fees. *Id*. There is no question that UND's right to recover the VAT it paid on contractor fees, professional fees and relocation costs stemmed from the Agreement.

As an example, if one were to buy a candy bar for $1 (inclusive of 7 cents sales tax) and that bar of candy was then stolen from the buyer, the buyer's loss would be $1, notwithstanding that 7 cents of that $1 was sales tax, because it would cost $1 to replace what the buyer had lost. Here, UND had to pay VAT to put right the work poorly performed by TJAC and ZVI and it is entitled under the Agreement to recover the full amount it spent notwithstanding some of that amount was VAT. Even the Expert recognized that UND sought reimbursement from TJAC and ZVI for VAT "on the amounts that the Expert found are due to UND in remedying the defects that TJAC/ZVI left behind at Conway Hall" because it is "*entitled to damages for breach of contract to put right the breaches (i.e. What it has to pay)*." Decl. at Ex. 5 ¶ 7 (addressing VAT) (emphasis added). Thus, the revenue rule does not apply because the crux of the Expert proceeding was contract enforcement, not enforcement of a foreign revenue law.

TJAC and ZVI next argue that UND seeks enforcement of a foreign tax award, as determined by the UK office of Customs and Excise. This is nonsensical. First, UND is not a governmental entity and could not and would not seek enforcement of a tax judgment of the United Kingdom's office of HM Customs and Excise. Second, UND has already paid VAT on the fees and costs at issue; there is no allegation that UND has any outstanding tax obligation. *See* Award No. 7. Third, the parties agreed to involve the HM Customs and Excise Office to determine whether UND paid more than it otherwise was required to pay in VAT because TJAC and ZVI

claimed that they were only entitled to reimburse UND for the VAT it was required to pay on the fees and costs at issue. Fourth, the HM Customs and Excise Office did not issue any tax award. Fifth, the HM Customs and Excise Office is not a party to this litigation and it is not seeking to enforce a tax judgment or recover taxes through this litigation.

All of the cases upon which TJAC and ZVI rely are distinguishable as each of them concerned claims by a foreign sovereign to enforce a tax obligation. *See European Cmty v. RJR Nabisco, Inc.*, 355 F.3d 123, 132 (2d Cir. 2004) (foreign sovereigns claimed that they suffered tax losses as a result of defendants' money laundering); *Republic of Ecuador v. Philip Morris Cos., Inc.*, 188 F. Supp. 2d 1359, 1366 (S.D. Fla. 2002), *aff'd sub nom, Republic of Honduras v. Philip Morris Cos.*, 341 F.3d 1253 (11st Cir. 2003) (foreign nation sought to enforce Ecuadorian tax laws); *AG of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103 (2d Cir. 2001) (Attorney General of Canada sought to recover, on behalf of Canada, damages based on lost tax revenue). Accordingly, there is no basis to apply the revenue rule here.

### B. Enforcement of Award No. 7 Does Not Violate Public Policy.

As TJAC and ZVI acknowledge, "'public policy exception is to be construed narrowly and should be applied only where enforcement would violate [the] most basic notions of morality and justice.'" Opp. at 14 (quoting *Europcar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 314 (2d Cir. 1998)). "Although this defense is frequently raised, it 'has rarely been successful.'" *Ministry of Def. v. Cubic Def. Systems, Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011) (quoting Andrew M. Campbell, *Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds*, 144 A.L.R. Fed. 481 (1998)). "Establishing a countervailing public policy that weighs against enforcement of an arbitral award is a 'substantial burden' and requires the moving party to 'demonstrate a countervailing public policy sufficient to overcome [the] strong policy favoring

7

confirmation.'" *BCB Holdings Ltd.*, 110 F. Supp. 3d at 250 (quoting *Ministry of Def.*, 665 F.3d at 1098)). A countervailing public policy "'must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *United Bhd. of Carpenters and Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 697 (D.C. Cir. 2013)).

TJAC and ZVI's argument that enforcement of the arbitral award would violate public policy rests on the same flawed premise as their revenue rule arguments. Award No. 7 is not akin to a foreign tax judgment. Rather, Award No. 7 permits UND to recover from TJAC and ZVI the amount of VAT it paid as a result of TJAC and ZVI's breach of contract. TJAC and ZVI have not carried their substantial burden of demonstrating a countervailing public policy sufficient to overcome the strong policy in favor of confirmation.

### III. This Court May Not Assess the Reasonableness of the Attorneys' Fees Awarded in the English High Court Judgment.

Notwithstanding their previous assertion of an affirmative defense that the attorneys' fees and costs awarded through the English High Court Judgment violate public policy, TJAC and ZVI now concede that they are not penal under the laws of England and are enforceable under the Massachusetts Foreign Judgment Recognition Act. Opp. at 16-17. However, TJAC and ZVI incorrectly argue that this Court has an obligation to independently review the English High Court Judgement to determine whether the attorneys' fees and costs awarded were reasonable.

When asked to recognize a foreign judgment as a matter of comity, a district court is forbidden from independently reviewing the merits of the foreign judgment before deciding whether to recognize it. It is a "basic principle" that "a judgment entitled to recognition will not be reexamined on the merits by a second court." ALI, Recognition and Enforcement of Foreign Judgments: Analysis and Proposed Federal Statute § 2, Cmt. d, p.38 (2005). Thus, "when a

8

judgment binds or is respected as a matter of comity, a 'let's see if we agree' approach is out of order." *Medellin v. Dretke*, 544 U.S. 660, 670 (2005) (Ginsberg, J., concurring).

The English High Court Judgment entered after that court considered and ruled on the reasonableness of UND's attorneys' fees. UND had submitted two statements of cost, totaling £115,924.57. Decl. at Ex. 12 ¶ 10. In accordance with CPR 44.3(1) and (2), only costs reasonably and necessary incurred, proportionate to the matters at issue and reasonable and proportion in amount may be awarded. *Id*. ¶ 9. The English High Court made detailed findings, reduced the rates for each of UND's attorneys, reduced the hours spent by each of UND's attorneys on letters and emails, reduced the hours spent by each of UND's attorneys on document preparation and reduced the costs claimed for certain work on witness statements. *Id*. ¶¶ 10-13. Ultimately, the court awarded £81,239.57 of the £115,924.57 claimed for costs and attorneys' fees. *Id*. ¶ 14. This Court may not second guess the wisdom, prudence, fairness or judgment of the English High Court.

### IV.   Post-Award, Prejudgment Interest Should be Awarded.

There also is no basis for the Court to deny UND of post-award, prejudgment interest on either the English High Court Judgment or the arbitral awards.

The English High Court issued its judgment on August 2, 2016, its decision on costs on August 8, 2016 and its sealed order on October 27, 2016. Decl. at Exs. 11-13. Under the sealed order, ZVI was ordered to pay UND's "costs of the action, summarily assessed on the standard basis in the sum of £81,239.57, *within 14 days of the date of this Order*." *Id*. at Ex. 13 (emphasis added). While ZVI was under a court order to pay within 14 days of the English High Court's October 27, 2016 sealed order, for nearly five years it has failed to do so.[5] Yet, ZVI protests that

---

[5] UND's status reports each reported that ZVI had failed to satisfy the English High Court judgment or make any proposal related to satisfaction of the judgment. *See* Dkt. Nos. 87-1, 93-1, 99-1, 100-1, 110-1, 111-1, 112-1, 113-1, 114-1, 115-1, 116-1, 117-1, 118-1, 119-1, 121-1, 122-1, 123-1, 125-1, 126-1.

9

UND waited too long to ask this Court to recognize the judgment so UND could collect against ZVI's Massachusetts-based assets. In ZVI's view, this Court should ignore that ZVI failed to satisfy an outstanding and valid judgment for nearly five years and instead penalize UND for filing a single dispositive motion in this case upon receipt of the Expert's final arbitral award, notwithstanding the fact that UND plainly made this issue known to the Court in response to clear direction that it "submit a joint status report every 60 days, until the Expert issues a final determination as to damages." Order at 17. There is no basis to do so. If any party has caused delay, it is ZVI, which could have altogether avoided post-award, prejudgment interest by satisfying the judgment within 14 days of the English High Court's October 27, 2016 sealed order.

There is also no basis to deny UND post-award prejudgment interest on the arbitral awards. As explained in Section I *supra*, UND moved to supplement its complaint within 45 days of the Expert's issuance of the final, binding quantum award. After UND's motion was granted, it immediately filed its Second Supplemented Amended Complaint on November 20, 2020. However, TJAC and ZVI did not timely respond. On January 4, 2021, UND's counsel inquired of TJAC and ZVI's counsel whether a response would be forthcoming. Finally, on January 13, 2021, TJAC and ZVI filed their answer to UND's Second Supplemented Amended Complaint, prompting the Court to schedule a conference where the Motion was discussed. Notwithstanding TJAC and ZVI's delay in responding to UND's Second Supplemented Amended Complaint, they now argue that UND delayed seeking confirmation of the quantum award and, therefore, UND should not be entitled to recover post-award prejudgment interest. There is no basis for this Court to conclude that UND is not entitled to recover post-award prejudgment interest.

## V.     Conclusion

The Court should confirm the arbitral award and enter summary judgment in UND's favor.

THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND,

By its attorneys,
*/s/ John A. Tarantino*
John A. Tarantino (BBO #492230)
Nicole J. Benjamin (BBO #666959)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903-2443
Tel:  (401) 274-7200
Fax: (401) 751-0604
jtarantino@apslaw.com
nbenjamin@apslaw.com

and

Luke T. Cadigan (BBO #561117)
Michael J. McMahon (BBO #679053)
Elizabeth A. Trafton (BBO #693969)
COOLEY LLP
500 Boylston Street
Boston, MA  02116-3736
Tel:  (617) 937-2300
Fax:  (617) 937-2400

June 9, 2021

## **CERTIFICATE OF SERVICE**

I, John A. Tarantino, hereby certify that pursuant to Local Rule 5.4(C), this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  For those parties indicated as non-registered participants, if any, a paper copy will be sent by facsimile and/or U.S. First Class Mail on June 9, 2021.

       */s/ John A. Tarantino*
       John A. Tarantino